UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-343-GWU

MICHAEL RAY COMBS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

<mark>09-343 Michael Ray Combs</mark>

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michael Ray Combs, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of asthma, a panic disorder, and borderline intellectual functioning. (Tr. 34). Nevertheless, based in part on the evidence of a Vocational Expert (VE), the ALJ determined that Mr. Combs retained the residual functional capacity (RFC) to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 37-41). The Appeals Council declined to review, and this action followed.

The ALJ submitted interrogatories to the VE asking whether the plaintiff, a 28-year-old man with a limited education and unskilled work experience, could perform any jobs if he: (1) were limited to sitting six hours in an eight-hour day (no more than four hours without interruption) and standing or walking no more than two hours each in an eight-hour day (no more than 30 minutes without interruption); (2) was prohibited from any overhead reaching with the left upper extremity, any balancing, or any climbing of ladders, ropes, or scaffolds; (3) was prohibited from more than occasional handling or overhead reaching with the right hand or upper extremity; (4) was prohibited from more than occasional pushing or pulling or other types of reaching with either upper extremity; (5) was prohibited from more than frequent use of either foot for the operation of foot controls; (6) was prohibited from more than occasional stooping, kneeling, crouching, crawling, or climbing stairs and ramps; (7) could not have any exposure to unprotected heights, humidity/wetness,

7

extreme heat or cold, dust, odors, fumes, or other pulmonary irritants; and (8) could have no more than occasional exposure to moving mechanical parts, operating a motor vehicle, or vibration.  The ALJ specified that the plaintiff could handle with his left hand continuously, could finger or feel with either hand continuously, and retained the residual functional mental capacity to perform work involving only routine, simple, and non-detailed tasks where public and coworker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the work force were infrequent and gradually introduced.  (Tr. 136).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 136-7).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning July 15, 2005 due to nervousness, back problems, and breathing problems.  (Tr. 94).  His main complaint at the administrative hearing was that he had problems being around people, although he also described lower back pain.  (Tr. 11-13).  He was not being treated for his nerves.  (Tr. 12).

The plaintiff does not challenge the ALJ's findings regarding physical restrictions, which are consistent with the conclusions of a consultative physical

examiner, K. M. Monderewicz. (Tr. 441-53). As there is no other evidence in the transcript, this portion of the decision is supported by substantial evidence.

The plaintiff raises two issues relating to his mental status.

First, Mr. Combs argues that the ALJ failed to properly apply the "special technique" for evaluating mental impairments set out in 20 C.F.R. § 416.920(a)(e). The special technique requires the Commissioner to evaluate a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he has] a medically determinable mental impairment(s)." If so, the Commissioner "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) . . . . " 20 C.F.R. § 416.920(a)(b). The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) are to be rated on a five-point scale: none, mild, moderate, marked, and extreme, while the fourth functional area (episodes of decompensation) is rated on a scale of none, one or two, three, and four or more. § 416.920(a)(c)(4). If a claimant is determined to have a "severe" mental impairment, the Commissioner then determines whether it meets or is equivalent in severity to a listed mental disorder by recording the presence or absence of the criteria for the appropriate Listing on a standard document at the initial and reconsideration levels of the administrative review process or in the ALJ's decision once the case reaches that level. § 416.920(a)(b)(2). The application of the special technique is to be documented at the ALJ level by showing "the significant history,

including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s) . . . [and t]he decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." § 416.920(a)(e)(2).

In the present case, state agency psychological reviewers determined that the plaintiff had a panic disorder, not otherwise specified, under the "A" criteria of the Commissioner's Listing of Impairment (LOI) 12.06, captioned "Anxiety-Related Disorders." (Tr. 194, 287). However, in rating the degree of functional limitations, they concluded that Mr. Combs had no more than a "mild" restriction in his activities of daily living, and "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace, while episodes of decompensation of extended duration were rated as "none." (Tr. 199, 292). They based their findings on the report of a consultative psychological examiner, Dr. Tammy Hatfield. Dr. Hatfield examined the plaintiff on April 10, 2007 and diagnosed a panic disorder and "suspected" borderline intellectual functioning. (Tr. 183).

Dr. Hatfield did not specifically discuss the "B" criteria, but the plaintiff asserts that her narrative report documents a moderate to marked impairment in social functioning and multiple episodes of decompensation in the work setting. This assertion is apparently based on the plaintiff's statements to Dr. Hatfield that he had

no friends, lived with his parents, and essentially did nothing all day but watch TV and go "back and forth" to bed, and that he had quit his most recent employment, repairing refrigerator parts, after five or six months "when he got aggravated." He also "reported that he has quit several jobs because 'they act like I'm messing up all the time.'" (Tr. 181). In discussing the "B" criteria, the ALJ reached the same conclusions as the psychological reviewers in finding no episodes of decompensation and only mild limitations in social functioning. (Tr. 37). The plaintiff argues that Dr. Hatfield's report actually reflects the requisite severity to meet the "B" criteria of LOI 12.06 and that the ALJ's decision lacks sufficient detail to explain his deviation from her opinion.

      As an initial matter, the court agrees with the defendant that the fact that the plaintiff reportedly quit several jobs because he "got aggravated" or was being criticized for not doing his job properly does not meet the regulatory definition for episodes of decompensation, which are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." The plaintiff appears to have been describing nothing more than a fit of pique. In any event, the Listing requires a showing of "repeated episodes of decompensation, each of extended duration;" i.e, "three episodes within one year, or an average of once every four months, each lasting for at least two weeks." 20 C.F.R Pt. 404 Subpt. P, App. 1, § 12.00C(4). There is no indication that the plaintiff's mental state, whatever it was at the time he quit his jobs, lasted for as long as two weeks,

11

or that all of these incidents happened within the required one-year period. Consequently, substantial evidence would support any reviewer who found that the plaintiff did not meet the Listing on this ground alone, and no useful purpose would be served by a remand.

Even if this were not so, the ALJ's use of the "special technique" complied with the regulatory requirements. The ALJ made specific findings under the "B" criteria and supported them with a detailed discussion of his reasons. For instance, although the plaintiff stated that he performed no daily activities, the ALJ noted that Mr. Combs also reported that he could drive wherever he needed to go, cared for his personal needs, mowed the lawn, went shopping on his own, and talked on the telephone. (Id.). There was no evidence of concentration deficits during the psychological evaluation and the ALJ also noted in passing there was no evidence of episodes of decompensation. (Id.).

Nothing in the case of Rabbers v. Commissioner of Social Security, 582 F.3d 647 (6th Cir. 2009) suggests a different outcome. In this case, the Sixth Circuit held that failure to follow the "special technique" of 20 C.F.R. § 404.1520a, a parallel provision of § 416.920a applicable to claims for disability insurance benefits, did not confer such important procedural safeguards on claimants that an ALJ's failure to rate the "B" criteria will rarely be harmless. Id. at 657 (internal quotation marks and citations omitted). The court required a showing that failure to rate the "B" criteria prejudices a claimant on the merits. The factual situation in Rabbers is

distinguishable because the ALJ had failed to make specific findings regarding the "B" criteria other than simply citing a medical expert's opinion. Id. at 654. Such was not the case here. Moreover, the Sixth Circuit's review of the evidence persuaded it that the plaintiff could not possibly satisfy the "B" criteria of the Listing. Id. at 658-61. For the reasons already described, Mr. Combs is not able to satisfy the Listing requirements, either. Therefore, the plaintiff's first issue is without merit.

The plaintiff also raises the issue of the adequacy of the hypothetical mental factors provided to the VE. The plaintiff notes that the consultative examiner, Dr. Hatfield, indicated that the plaintiff's capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting was "moderately to markedly influenced by his panic and is thought to be negatively influenced by his suspected level of intellectual functioning." (Tr. 183). His ability to tolerate the stress and pressure of day-to-day employment was also said to be moderately affected. (Id.). The plaintiff suggests that the ALJ intended to rely on the consultative psychologist because he stated that "I agree with the state agency mental health experts . . . and Dr. Hatfield . . . that the claimant has no more than moderate impairments relating to psychological issues." (Tr. 39). Moreover, the plaintiff notes that the state agency psychologists completed mental residual functional capacity forms indicating that Mr. Combs was "moderately limited" in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or

13

proximity to others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 185-6, 278-9). None of these specific limitations were included in the hypothetical question.

The defendant responds that Dr. Hatfield's "moderate to marked" limitation of ability to respond appropriately to supervisors and coworkers was reasonably encompassed by the hypothetical limitation to casual and infrequent contact with coworkers and the public, direct and non-confrontational supervision, and infrequent and gradual changes in the work force. (Tr. 136). Since the term "marked" is not defined in Dr. Hatfield's report, the court concludes that a reasonable finder of fact could have concluded that infrequent contact with coworkers and non-confrontational supervision would be consistent with the consultative psychologist's opinion.

Regarding the "moderate" limitations indicated by the state agency psychologists in the "Summary Conclusions" portion of their mental RFCs, the defendant concedes that they were not specifically given in the hypothetical question but asserts that internal manuals published by the Social Security Administration provide that they are not part of the reviewing psychologists' functional capacity assessment. The Sixth Circuit recently declined to specifically rule on this question in Ealy v. Commissioner of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010). As in Ealy, it is not necessary to make a specific ruling on this

issue because the conclusions made by the psychologists in Section III of the mental RFCA were not fully provided to the VE. The Sixth Circuit noted that the reviewing psychologists in Ealy had specifically limited the plaintiff's ability to sustain attention to complete simple tasks for two-hour segments. Id. at 516. Since the two-hour limitation in attention was not provided to the VE, the court held that the hypothetical question inadequately described Ealy's limitations. Id. at 517. By the same logic, the hypothetical was inadequate in the same way in the present case, and a remand will be required for further consideration.

    The decision will be remanded for further consideration.

    This the 30th day of June, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**